UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

CHARLES S.,

Plaintiff,

v.

COMMISSIONER SOCIAL SECURITY ADMINISTRATION,

Defendant.

Case No. 6:25-cv-01608-AR

**OPINION AND ORDER**

---

**ARMISTEAD, United States Magistrate Judge**

Charles S. challenges the Commissioner's final decision denying his disability benefits. Plaintiff argues that the Administrative Law Judge (ALJ) erred by: (1) discounting his subjective symptom testimony; (2) improperly rejecting the medical opinion of William Brus, M.D.; and (3) improperly discounting lay witness testimony. (Pl.'s Br. at 3-19, ECF 7.) The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence. *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir.

2023). With that standard of review applied, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

**A.** ***Subjective Symptom Testimony.*** Plaintiff argues that the ALJ did not provide clear and convincing reasons for discounting his subjective symptom testimony. *See Smartt v. Kijakazi*, 53 F.4th 489, 497 (9th Cir. 2022) (explaining that if a claimant provides objective medical evidence of an underlying impairment and there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony). According to plaintiff, the ALJ failed to address his extreme fatigue and need to nap daily, his blurred vision, photophobia, and difficulty with visual tracking, and the frequency and intensity of his migraines. Also argued by plaintiff is that the ALJ's supplied reasons—his activities of daily living, inconsistency with objective findings, and limited treatment—are not supported by substantial evidence. (Pl.'s Br. at 3-15.)

The Commissioner responds that the ALJ was not required to specifically discuss his need to nap regularly, that his eye problems prevent him from sustaining work, and that he has migraines every 10 days. According to the Commissioner, plaintiff attributes all his symptoms to his post-concussion syndrome. Because the ALJ adequately discussed that plaintiff's post-concussive syndrome was not supported by the objective medical evidence, in the Commissioner's view, the ALJ was not required to separately discuss his specific symptoms. (Def.'s Br. at 8-9.)

"Although an ALJ may use '*inconsistent* objective medical evidence in the record to discount subjective symptom testimony,' the ALJ 'cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence

fully corroborating every allegation within the subjective testimony.'" *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024) (quoting *Smartt*, 53 F.4th at 498 (emphasis added) (citation modified)) and (citing *Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020) ("An ALJ, however, may not discredit the claimant's subjective complaints solely because the objective evidence fails to fully corroborate the degree of pain alleged.")). Although an ALJ need not discuss all evidence or provide a "line by line exegesis," *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020), there must be an explanation why "significant probative evidence has been rejected." *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022) ("[A]n ALJ may not ignore significant probative evidence that bears on the disability analysis.").

After acknowledging that "the record *does* support a diagnosis of post-concussive syndrome, the ALJ found the "objective findings contrastingly largely unremarkable." (Tr. 21 (emphasis added).) For example, the ALJ pointed to plaintiff's neuropsychological test results that "suggest[ed] good cognitive recovery following concussion." (Tr. 21, citing Tr. 435-36.) The ALJ pointed to a neurological independent medical examination that stated that plaintiff's "multiple complaints cannot be attributed anymore to the concussion" and that the "[p]ersistence of symptoms now into a year and a half from the date of injury is an indication of other factors as the most probable cause such as depression, anxiety, or symptom magnification." (Tr. 21, 627-28.) Also discussed by the ALJ was neurological testing that showed a decline in his ability to encode and retain certain types of information after his alleged onset date, yet his performance remained within normal limits. (Tr. 21, 2F/22). And contrary to plaintiff's allegations of declined cognition and memory, the ALJ identified multiple treatment notes reflecting that he is clear, articulate, fluent, attentive, and cooperative with intact language memory and cognition. (Tr. 21-

22, (5F/100, 8F/3, 12F/815F/89, 15F/81). Thus, the ALJ's findings in that regard are supported by substantial evidence.

Yet the ALJ failed to address plaintiff's blurred vision and inability to sustain working for eight hours a day, 40 hours a week. At the hearing, plaintiff testified that his symptoms include blurry vision, issues with his right eye tracking, light and sound sensitivity, with mental fog and difficulty multitasking. (Tr. 39, 40, 44.) Medical records show that plaintiff reported those symptoms to his medical providers, and that despite months of physical therapy and speech therapy, his progress plateaued. (Tr. 846, 912, 933, 946, 1070, 1094, 1111-13.) Plaintiff reported to his providers that after 35 to 40 minutes of effort, his eyes would get fuzzy and he would experience worsening symptoms. (Tr. 936-46, 1111-13.) The Commissioner responds that plaintiff's "visual fields and cranial nerves were intact" and that his symptoms were based solely on his subjective complaints. (Def.'s Br. at 9, ECF 10.) However, plaintiff's blurred vision, right eye tracking, or his inability to sustain vision and focus for 40 hours per week is significant probative evidence that bears on the disability analysis, and the ALJ erred in failing to discuss it. *Kilpatrick*, 35 F.4th at 1193.

Plaintiff likewise contends that the ALJ erred by failing to address his extreme fatigue and need to need to nap each day. The court agrees. The ALJ discussed plaintiff's reports of fatigue, finding that he has "some resulting limitations," citing a 2022 speech therapy diagnostic evaluation revealing speech and language skills within normal limits, yet noting he had difficulty with executive function skills, and that despite "above the mean" for auditory retention, those tasks took "significant effort, leading to an increase of symptoms." (Tr. 22, quoting Tr. 915.) Based on that evidence, the ALJ limited plaintiff to "light work" with postural restrictions,

simple instructions, with no specific production rate to address his "reports of fatigue, memory issues, confusion, and exacerbation of symptoms with activity." (Tr. 22.) The ALJ does not, however, explain how limiting plaintiff to a restricted range of light work addresses his ability to sustain work for a full workday or workweek without the need for a daily nap, especially given that the limited testing exacerbated his symptoms. Accordingly, the court concludes that the ALJ did not provide specific, clear and convincing reasons to discount plaintiff's testimony that his blurry vision, eye problems, extreme fatigue, and napping renders him unable to sustain work for eight hours a day, 40 hours a week. *See Jacqueline, L. v. Berryhill*, 3:18-cv-00715-SI, 2019 WL 1922525, at *6-7 (D. Or. Apr. 30, 2019) (concluding that ALJ erred in failing to provide clear and convincing reasons to discount claimant's testimony that due to concussion, she could not sustain a 40-hour workweek).

With respect to his migraines, the ALJ found that plaintiff's reports of migraines to his providers contained minimal description of symptoms, and that his treatment was limited to medication management with sumatriptan, Tylenol, and venlafaxine, with "little indication of follow up," including lenses that would reduce photophobia or acupuncture. (Tr. 18.) Contrary to the ALJ's determination, plaintiff reported to a provider that he had obtained the FL 41 lenses, but preferred to wear regular wrap-around sunglasses, and that he did not pursue acupuncture for financial reasons. (Tr. 1138, 1143.) Thus, those portions of the ALJ's findings are not supported by substantial evidence, and the ALJ erred in discounting plaintiff's symptom testimony on that basis. *See Trevizo v. Berryhill*, 871 F.3d 664, 681 (9th Cir. 2017) ("Disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds.") (citation omitted).

As for the frequency and intensity of plaintiff's migraines, the ALJ appeared to discount plaintiff's symptom testimony because he did not begin taking venlafaxine until 2023, "well-over a year after the alleged onset date." (Tr. 23.) Although the ALJ acknowledged that "some hesitation on utilizing medication was not surprising given" that it could cause plaintiff's Crohn's disease to flare, even so, the ALJ noted that after starting the medication, plaintiff reported symptom improvement, with additional benefit after his venlafaxine dosage was increased. (Tr. 21, 23.) Although substantial evidence supports the ALJ's finding that plaintiff's constellation of post-concussive symptoms improved, the ALJ did not tie that finding specifically to plaintiff's migraines. Consequently, that rationale cannot support discounting plaintiff's testimony that he experienced a migraine "maybe once every ten days" and needs to rest for two or three days afterward. (Tr. 47.) *Brown-Hunter v. Colvin*, 806 F.3d 487, 493-94 (9th Cir. 2015) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.") (quotation omitted)). In summary, because only a portion of the ALJ's findings are supported by substantial evidence, inconsistency with the medical evidence fails to provide a specific, clear and convincing rationale for discounting plaintiff's subjective symptom testimony.

And as argued by plaintiff, the ALJ erred in relying on plaintiff's daily activities to discount his symptom testimony. (Tr. 13-14.); *Ferguson*, 95 F.4th at 1203 ("Only if the level of activity [is] inconsistent with Claimant's claimed limitations" do daily "activities have any bearing on Claimant's credibility.") (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("[I]f a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ

may discredit the claimant's allegations upon making specific findings relating to those activities."). The ALJ discounted plaintiff's on-going concussion-related symptoms because he was "attending multiple birthday parties, doing two dog walks as part of his exercise routine, and using a rowing machine," and took "his wife out to eat." (Tr. 21, 23.) Those findings are not, however, supported by substantial evidence in the record. Plaintiff testified that he could use a rowing machine for up to three minutes before becoming fatigued, and his medical records reflect that limited use. (Tr. 53, 439.) And although the record shows that plaintiff dined out a handful of times, it also reflects that he was bothered by lights and noise, could not process information while doing so, and that those outings caused fatigue. (Tr. 344.) The ALJ identified no evidence about how the birthday parties or dog walking were inconsistent with his allegations. *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) ("[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations[.]" (quotation omitted)).

Additionally, the ALJ discounted plaintiff's testimony because he "flew to Illinois and Colorado in 2023, [and] traveled to the redwoods in 2024." (Tr. 23.) Plaintiff testified that he traveled to Colorado because his mother-in-law was in hospice care and that he traveled to Illinois so that his children could see their grandparents. (Tr. 44-45, 344.) Those occasional trips to visit family are insufficient to undermine plaintiff's subjective symptom testimony here. *See Poppa v. Comm'r Soc. Sec. Admin.*, 202 F.3d 278, *3 (9th Cir. 1999) ("Visits to family are not inconsistent with the need to rest for extended periods, nor with debilitating pain."). Because the ALJ did not explain how those activities were inconsistent with plaintiff's symptom testimony or

they could be transferred to the workplace, the ALJ erred in relying on them to discount plaintiff's testimony.

Finally, the ALJ relied on plaintiff's lack of mental health treatment to discount his symptom testimony, including his fatigue. *See* 20 C.F.R. § 404.1529(c)(3) (providing that an ALJ may consider a plaintiff's treatment and medications when evaluating symptoms); *Burch*, 400 F.3d at 681 ("The ALJ is permitted to consider lack of treatment in his credibility determination."). The ALJ cited a 2021 neurophysiological evaluation that concluded that plaintiff's "postconcussive symptoms are considered to be secondary to mood factors and disrupted sleep," that psychotherapy services were recommended again in 2022, and that he failed to follow up. (Tr. 23, 435-36, 447, 450.) Plaintiff does not dispute the ALJ's finding that he has not made any "recent efforts to obtain mental health services." (Tr. 23, Pl.'s Br. at 15.) Because that finding is supported by substantial evidence, the ALJ could reasonably discount plaintiff's subjective symptom testimony on that basis.

Even so, the ALJ's errors addressed above are not harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115, 1122 (9th Cir. 2012) (ALJ's errors may be harmless if the other reasons are supported by substantial evidence and do not alter the ALJ's decision). The rationale that remains—his limited mental health treatment—standing alone and on this record, fails to provide a specific, clear and convincing rationale for discounting plaintiff's testimony and may have altered the nondisability determination. *Jacqueline, L.*, 2019 WL 1922525, at *7 (error in evaluating plaintiff's testimony about her ability to sustain work was not "inconsequential to the ultimate nondisability determination") (quoting *Molina*, 674 F.3d at 1115).

**B.** ***William Brus, M.D.*** William Brus is plaintiff's primary care physician. He opined that plaintiff could not perform "2 to 4 hours of work per day" because of visual memory, auditory memory, learning, reading and executive function challenges. (Tr. 1267.) The ALJ found Brus's opinion unpersuasive. (Tr. 23.); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022); 20 C.F.R. § 404.1520c(b)(2) (requiring ALJs to articulate "how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors"). The supportability factor requires the ALJ to assess the persuasiveness of a medical opinion based on how "relevant the objective medical evidence and supporting explanations" are. 20 C.F.R. § 404.1520c(c)(1). The consistency factor requires the ALJ to assess a medical opinion's alignment with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). Plaintiff challenges the ALJ's evaluation of both factors. (Pl.'s Br. at 16-19.)

Here, the ALJ found that Brus's opinion lacked supportability because his limited treatment "offer little other than plaintiff's subjective reports, and his examination notes do not support his extreme limitations. (Tr. 23 ("On examination with Dr. Brus, [plaintiff] almost always presents as alert and/or oriented with no weaknesses."), citing Tr. 1182, 1188.) The ALJ also explained that plaintiff's neurological and psychiatric systems consistently indicated that he was "alert and oriented to person, place and time" and that his coordination, mood, affect, behavior, thought content, and judgment were normal. (Tr. 23, 1182, 1188.) Because the ALJ erred in evaluating plaintiff's subjective symptom testimony about his blurry vision, extreme fatigue, and migraines, that rationale fails to provide a sufficient rationale backed by substantial evidence for rejecting Brus's opinion. *Maria B. v. Comm'r Soc. Sec. Admin.*, 6:23-cv-01705-JR, 2024 WL 4850755, at *5 (D. Or. Nov. 21, 2024) (ALJ erred in finding medical opinion

unpersuasive by ignoring medical evidence in the record and erroneously rejecting plaintiff's subjective symptom testimony). And the ALJ does not adequately explain how Brus's normal examination findings undermine his opinion about plaintiff's inability to sustain a full workday or workweek due to his extreme fatigue, blurry vision, and migraines. Thus, the ALJ erred in making his supportability findings.

The ALJ found Brus's opinion inconsistent with other evidence in the record as a whole, including plaintiff's ability to clearly discuss his condition, symptoms, and concerns with providers, MRI results showing "[n]o evidence of acute or chronic traumatic brain injury," and the other physicians' evaluations who indicated that he "had no ongoing limitations related to his post-concussion syndrome." (Tr. 24, citing Tr. 428, 628 ("current multiple complaints cannot be attributed any more to the concussion sustained"), Tr. 669 (finding that "there is no evidence of residual neurological dysfunction due to the possible mild concussion").) The ALJ's discussion of the consistency factor is lacking, for two reasons.

First, the ALJ relied on plaintiff's ability to take multiple trips, attend multiple birthday parties, "regularly walk his dog and use a rowing machine" to discount Brus's opinion. (Tr. 24.) As above, the ALJ's findings about plaintiff's ADLs are not supported by substantial evidence, and the ALJ likewise erred in finding Brus's opinion unpersuasive on that basis. Second, as argued by plaintiff, elsewhere in the decision, the ALJ found that the record "supports a diagnosis of post concussive syndrome," noting that plaintiff continues to have "persistent symptoms" as determined in the 2022 diagnostic speech therapy evaluation (Tr. 21, 22, 24, citing 915), yet the ALJ overlooked that Brus's opinion is consistent with that evaluation when

explaining the consistency factor. Accordingly, the ALJ erred in discussing the persuasiveness of Brus's opinion. *Maria B.*, 2024 WL 4850755, at *5.

**C.** ***Lay Witness Testimony.*** Lay witness testimony about a claimant's symptoms is competent evidence that an ALJ must consider, and an ALJ may reject that evidence only if the ALJ provides germane reasons. *Fain v. Bisignano*, ___ F.4th ___, 2026 WL 2795427, at *5 (9th Cir. Sept. 18, 2026) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (holding that revised regulations require ALJ to consider lay testimony and provide germane reasons to discount it). Here, the ALJ summarized plaintiff's spouse's testimony in one sentence: "[C]laimant's wife testified that he has ongoing problems including difficulty with processing." (Tr. 23.) Plaintiff contends that the ALJ did not provide legally sufficient reasons to discount her testimony that he needs to take naps, experiences extreme fatigue, and has migraines if his symptoms are high. (Pl.'s Br. at 19.)

As explained above, because the ALJ failed to provide specific, clear and convincing reasons for discounting plaintiff's symptom testimony, the ALJ likewise erred in evaluating his spouse's similar testimony. *Gregory G. v. Comm'r Soc. Sec. Admin.*, 6:24-cv-01521-JR, 2025 WL 1453277, at *6 (May 21, 2025) (because ALJ failed to "supply legally sufficient reasons for rejecting plaintiff's subjective complaints, and these same rationales do not support the decision to discount the lay witness testimony," the ALJ erred in rejecting lay testimony); *cf. Molina*, 674 F.3d at 1117 (if ALJ provides clear and convincing reasons for rejecting a claimant's subjective complaints, failing to discuss similar testimony from lay witness may be harmless error).

**D.** ***Remedy.*** Remand for further administrative proceedings is necessary here. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (discussing three-part "credit-as-true"

analysis). The ALJ erred in failing to provide specific, clear and convincing reasons for discounting plaintiff's testimony and failed to provide a germane reason for discounting the similar lay testimony of his spouse. The ALJ also failed to adequately discuss the supportability and consistency factors in evaluating the persuasiveness of Brus's medical opinion. Those errors may have affected the remaining steps and issues concerning the ultimate determination of plaintiff's disability remain unresolved. Ambiguities and conflicts in the record remain. *Id.* at 410 (district court does not abuse discretion to remand for further proceedings where there are "inconsistencies, conflicts, and gaps, in the record"). There are conflicts between Brus's medical opinion and those of other providers. On remand the ALJ is to reconsider plaintiff's subjective symptom testimony about his blurry vision, extreme fatigue, napping, and headaches and his ability to sustain employment for a full workday and workweek as described above. The ALJ also is to reconsider Brus's opinion as discussed above, reevaluate the lay testimony, reformulate the RFC if necessary, and seek further VE testimony at step five, if necessary.

**CONCLUSION**

For the above reasons, the court REVERSES and REMANDS the Commissioner's final decision for further administrative proceedings. This action is DISMISSED.

DATED: October 29, 2026.

JEFF ARMISTEAD
United States Magistrate Judge